PD-0377-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/17/2015 1:17:19 PM
Accepted 4/21/2015 1:09:02 PM
ABEL ACOSTA
CLERK

NO. PD-0377-15

_____

IN THE
COURT OF CRIMINAL APPEALS
OF TEXAS

_____

NAM BRYAN TRAN

VS.

THE STATE OF TEXAS

_____

ON DISCRETIONARY REVIEW FROM THE
COURT OF APPEALS FOR THE
SIXTH JUDICIAL DISTRICT OF TEXAS
AT TEXARKANA
CAUSE NUMBER 06-13-0087-CR

_____

Appealed from the 371st District Court
of Tarrant County
Cause Number 1277354D

_____

PETITION FOR DISCRETIONARY REVIEW

_____

FILED IN
COURT OF CRIMINAL APPEALS

April 21, 2015

ABEL ACOSTA, CLERK

Randy Schaffer
State Bar No. 17724500

1301 McKinney, Suite 3100
Houston, Texas 77010
(713) 951-9555
(713) 951-9854 (facsimile)
noguilt@swbell.net

Attorney for Appellant
NAM BRYAN TRAN

# IDENTITY OF PARTIES

Appellant:                Nam Bryan Tran
Inmate No. 1849011
Telford Unit
3899 State Hwy. 98
New Boston, Texas 75570

Trial Counsel:           Jim Shaw
Mary Young
James Renforth
916 W. Belknap
Fort Worth, Texas 76102

Appellate Counsel:    Max Striker
3000 E. Loop 820
Fort Worth, Texas 76112

Trial Prosecutors:     Keith Harris
Timothy Bednarz
401 W. Belknap
Fort Worth, Texas 76102

Appellate Prosecutors:  Charles Mallin
Andy Porter
401 W. Belknap
Fort Worth, Texas 76102

Trial Judge:            Mollee Westfall
401 W. Belknap
Fort Worth, Texas 76102

# SUBJECT INDEX

**Page**

STATEMENT REGARDING ORAL ARGUMENT ........................................ 1

STATEMENT OF THE CASE ................................................................... 1

STATEMENT OF THE PROCEDURAL HISTORY ...................................... 1

GROUNDS FOR REVIEW ..................................................................... 2

GROUND ONE ..................................................................................... 3

> THE COURT OF APPEALS ERRED IN HOLDING THAT THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING THE PROSECUTOR TO QUESTION APPELLANT ABOUT ILLEGALLY CARRYING A GUN AS A CONVICTED FELON AND IN A PLACE LICENSED TO SELL ALCOHOLIC BEVERAGES.

GROUND TWO ...................................................................................... 7

> THE COURT OF APPEALS ERRED IN HOLDING THAT THE TRIAL COURT PROPERLY INSTRUCTED THE JURY ON THE DOCTRINE OF PROVOKING THE DIFFICULTY AS A LIMITATION ON THE RIGHT TO SELF-DEFENSE.

CONCLUSION ....................................................................................... 11

CERTIFICATE OF SERVICE ................................................................... 12

CERTIFICATE OF COMPLIANCE ............................................................ 12

APPENDIX ........................................................................................... 13

# INDEX OF AUTHORITIES

**Cases**                                                                  **Page**

Alexander v. State, 740 S.W.2d 749 (Tex. Crim. App. 1987).........................    6

Johnson v. State, 649 S.W.2d 111 (Tex. App.—San Antonio 1983), aff'd on
        other grounds, 662 S.W.2d 368 (Tex. Crim. App. 1984).....    5

Mendoza v. State, 349 S.W.3d 273 (Tex. App.—Dallas 2011, pet. ref'd)....... 10, 11

Stanley v. State, 625 S.W.2d 320 (Tex. Crim. App. 1981) ..............................    9

Tave v. State, 620 S.W.2d 604 (Tex. Crim. App. 1981) ..................................  9, 10

Theus v. State, 845 S.W.2d 874 (Tex. Crim. App. 1992)................................    3

**Rules**

TEX. R. APP. P. 66.3(a) ....................................................................................  7, 10

TEX. R. APP. P. 66.3(b) ....................................................................................    7

TEX. R. APP. P. 66.3(c) ....................................................................................   10

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not request oral argument but will present it if the Court desires.

## STATEMENT OF THE CASE

Several people were drinking at a club after a wedding. Austin Nguyen and appellant, both of whom were intoxicated,[1] were seated at a table when Nguyen, for no reason, "sucker punched" appellant, knocking him to the ground.[2] They fought, and appellant pulled out a gun and shot once in the air and several times in the direction of Nguyen, who was approaching him with a chair. Two of the shots were fatal. Appellant left the scene and was arrested about eight months later. The jury rejected self-defense and convicted him of murder.

## STATEMENT OF THE PROCEDURAL HISTORY

Appellant pled not guilty to murder (second offender) in cause number 1277354D in the 371st District Court of Tarrant County before the Honorable Mollee Westfall. A jury convicted him and assessed his punishment at 99 years in prison on April 8, 2013. Jim Shaw, assisted by Mary Young and James Renforth, represented him at trial.

The Sixth Court of Appeals affirmed appellant's conviction in an

---

[1] The pathologist testified that Nguyen had a blood alcohol content of 0.06 and enough cocaine in his system to suggest that he consumed a significant amount within a few hours of his death (5 R.R. 68-69).

[2] A videotape of this assault was admitted in evidence (4 R.R. 72).

1

unpublished opinion issued on March 4, 2014.  This Court denied his untimely *pro se* motion for an extension of time to file a PDR in number PD-0616-14 on May 14, 2014.  Tran v. State, 2014 WL 859674, No. 06-13-00087-CR (Tex. App.—Texarkana 2014, no pet.) (not designated for publication) (Appendix).  Max Striker represented him in the court of appeals, and he represented himself in this Court.

This Court granted appellant the opportunity to file an out-of-time PDR on March 18, 2015.  Ex parte Tran, No. WR-81,760-02 (Tex. Crim. App. 2015).  It granted an extension of time to July 2, 2015, to file the PDR in number PD-0377-15 on April 2, 2015.

## GROUNDS FOR REVIEW

1. Whether the court of appeals erred in holding that the trial court did not abuse its discretion in allowing the prosecutor to question appellant about illegally carrying a gun as a convicted felon and in a place licensed to sell alcoholic beverages (6 R.R. 114-17).

2. Whether the court of appeals erred in holding that the trial court properly instructed the jury on the doctrine of provoking the difficulty as a limitation on the right to self-defense (C.R. 68-69; 6 R.R. 172-73).

2

**THE COURT OF APPEALS ERRED IN HOLDING THAT THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN ALLOWING THE PROSECUTOR TO QUESTION APPELLANT ABOUT ILLEGALLY CARRYING A GUN AS A CONVICTED FELON AND IN A PLACE LICENSED TO SELL ALCOHOLIC BEVERAGES.**

Appellant testified on direct examination that he was sitting at a table in the club when Nguyen, whom he did not know, asked, "Is your name Birdie?" (6 R.R. 87-90). When he did not respond, Nguyen punched him for no reason, and he fell to the ground (6 R.R. 90-91, 96-97). Nguyen and other persons hit and kicked him (6 R.R. 91). He got up, scared and in a panic, and ran to the stage (6 R.R. 92). He pulled a gun and shot in the air as a "scare tactic" to get some "room" (6 R.R. 96). Nguyen ran at him with a chair (6 R.R. 97). Being outnumbered, and in fear of serious bodily injury and death, he fired shots, and Nguyen fell (6 R.R. 97, 99-101).

The prosecutor elicited on cross-examination that appellant had been convicted of possession of more than four grams of methamphetamine in 2008 and less than one gram of a controlled substance in 2004 (6 R.R. 112-13).[3] The prosecutor asked, "You understand that as a convicted felon, you can't own a gun,

---

[3] Defense counsel did not attempt to exclude these prior convictions which were unrelated to appellant's credibility, under <u>Theus v. State</u>, 845 S.W.2d 874, 880 (Tex. Crim. App. 1992).

right?" (6 R.R. 114). The court overruled counsel's relevancy objection and appellant answered yes. The court then conducted a hearing outside the presence of the jury. The prosecutor argued that testimony that appellant illegally possessed a gun as a convicted felon and that he knew that it was illegal to possess a gun in a club was relevant to the reasonableness of his self-defense claim (6 R.R. 114-16). Counsel responded that neither appellant's felony conviction nor his illegal possession of the gun was relevant to whether he had a right to defend himself from an actual or apparent attack (6 R.R. 115-16). The court overruled the objection, observing that appellant's knowledge that he was violating the law was relevant to his self-defense claim (6 R.R. 116-17). Appellant testified before the jury that he knew that it was illegal for a convicted felon to possess a gun but did not know that it was illegal to possess a gun inside a club (6 R.R. 117-18).

The prosecutor argued, in asking the jury to reject self-defense, "Why did he even have a gun there in the first place? What does that tell you about him? He's a convicted felon. He has no business even having a gun. He has no business going into a bar where it's illegal to possess a gun. There's two violations right there" (6 R.R. 182).

Appellant contended on appeal that the trial court abused its discretion in allowing the prosecutor to question him about illegally possessing a gun as a convicted felon and in a place licensed to sell alcoholic beverages. The court of

4

appeals, without analysis or citation to relevant authority, held that the trial court did not abuse its discretion because appellant's "decision to bring a firearm into the club when he knew he was prohibited from owning such a weapon was relevant to the question of whether his conduct in shooting Nguyen was reasonable under the circumstances." Tran, 2014 WL 859674 at *9.

The decision of the court of appeals conflicts in principle with Johnson v. State, 649 S.W.2d 111 (Tex. App.—San Antonio 1983), aff'd on other grounds, 662 S.W.2d 368 (Tex. Crim. App. 1984). The defendant shot the complainant in a bar and was charged with attempted murder. The prosecutor elicited from the owner that the bar was licensed to sell beer. The prosecutor asked whether there was a sign in the bar that it was a felony to carry a weapon on the premises. The trial court sustained an objection, instructed the jury to disregard, but denied a motion for mistrial. Thereafter, the prosecutor asked the defendant over objection if he knew that, by entering the bar with a gun, he was violating the law by carrying a weapon on premises licensed to sell alcoholic beverages. The prosecutor argued during summation that the defendant, knowing that it was an offense, took a gun into licensed premises so he could shoot someone. The court of appeals held that the trial court erred in allowing cross-examination on this subject because there was no relationship between unlawfully carrying a gun on licensed premises and the charged offense of attempted murder. Id. at 118. The

5

defendant was harmed because the prosecutor's argument implied that he intentionally committed attempted murder because he intentionally committed the offense of carrying a weapon on licensed premises. Id; cf. Alexander v. State, 740 S.W.2d 749, 763-65 (Tex. Crim. App. 1987) (although defendant was properly impeached with felony convictions, reversible error to allow prosecutor to question him about making false statement about those convictions when he bought gun several months before charged capital murder).

Establishing that appellant knew that it is illegal for a convicted felon to possess a gun and for anyone to possess a gun in a place licensed to sell alcoholic beverages was irrelevant to whether appellant's use of that gun to defend himself was lawful. If Nguyen unlawfully attacked appellant, causing him reasonably to fear serious bodily injury or death, he had a right to use deadly force to defend himself even if he illegally possessed the gun. Conversely, if he did not reasonably fear serious bodily injury or death, he did not have a right to use deadly force to defend himself even if he legally possessed the gun. There simply was no connection between his knowledge that he could not legally possess a gun as a convicted felon or in a place licensed to sell alcoholic beverages and whether his use of that gun to defend himself was lawful. Thus, the trial court abused its discretion in allowing the prosecutor to question him about these matters. The error was harmful in view of the prosecutor's argument that appellant did not have

6

a right to use the gun to defend himself because he violated the law by possessing it as a convicted felon and in a place licensed to sell alcoholic beverages. Discretionary review is required because the holding of the court of appeals conflicts in principle with <u>Johnson</u> (which it did not even mention) and this important issue of state law has not been, but should be, resolved by this Court. TEX. R. APP. P. 66.3(a) and (b).

<u>**GROUND TWO**</u>

**THE COURT OF APPEALS ERRED IN HOLDING THAT THE TRIAL COURT PROPERLY INSTRUCTED THE JURY ON THE DOCTRINE OF PROVOKING THE DIFFICULTY AS A LIMITATION ON THE RIGHT TO SELF-DEFENSE.**

The State relied on Kathy Nguyen, who was serving a six-year federal sentence for conspiracy to distribute ecstasy and marijuana, to testify about how the altercation started (4 R.R. 42-44, 79, 82-83).[4]  Kathy testified that appellant and Austin Nguyen were seated next to each other in the club (4 R.R. 52). Appellant was loud, banged a beer bottle on the table, and was told to "chill out" (4 R.R. 54-55).  Appellant touched Nguyen on the shoulder (4 R.R. 56).  Nguyen knocked appellant to the ground, and they started fighting (4 R.R. 57, 94).

Appellant testified that Nguyen, whom he did not know, asked, "Is your name Birdie?" (6 R.R. 90).  When he did not respond, Nguyen punched him for no

---

[4]  Hoa Duong and Robert Dennie, the only other prosecution witnesses who were present when the altercation started, did not see how it started (3 R.R. 107-09, 205).

7

reason, and he fell to the ground (6 R.R. 90-91, 96-97). Nguyen and other persons hit and kicked him (6 R.R. 91). He got up, scared and in a panic, and ran to the stage (6 R.R. 92). He pulled a gun and shot in the air as a "scare tactic" to get some "room" (6 R.R. 96). Nguyen ran at him with a chair (6 R.R. 97). Being outnumbered, and in fear of serious bodily injury and death, he fired shots, and Nguyen fell (6 R.R. 97, 99-101).

The court instructed the jury in the charge on self-defense (C.R. 66-68). It also instructed the jury on provoking the difficulty as a limitation on the right to self-defense (C.R. 68-69). Specifically, it instructed the jury to reject self-defense if it found beyond a reasonable doubt that, immediately before the difficulty, appellant said or did something with the intent to "produce the occasion for killing" Nguyen; that his words or acts "were reasonably calculated to, and did, provoke a difficulty"; that Nguyen attacked or appeared to attack him with deadly force; and that he killed Nguyen (C.R. 69).

The prosecutor argued during summation that the jury should reject self-defense because appellant provoked the difficulty by pulling a gun to scare Nguyen rather than to protect himself (6 R.R. 199, 202).[5]

Appellant contended on appeal that the trial court erred in instructing the jury on the doctrine of provoking the difficulty as a limitation on the right to self-

---

[5] The prosecutor focused the jury on the wrong point in time. Nguyen's assault of appellant at the table was the difficulty that ultimately resulted in the shooting.

defense. The court of appeals observed that the interaction between appellant and Nguyen began when Nguyen asked if his name was Birdie. Tran, 2014 WL 859674 at *7. The video recording depicted appellant lean forward, put his arm on Nguyen's shoulder, and say something. Id. In response, Nguyen immediately pushed appellant back, stood up, and punched him. Id. The court held, "Although Tran claims he cannot remember what he said to Nguyen that evidently provoked a quick and violent response, the jury was free to infer that the words Tran spoke were designed to provoke Nguyen. Given that Tran shot Nguyen less than one minute after these words were spoken, the jury could easily infer that Tran's words were spoken with the intent to create a pretext for inflicting harm on Nguyen." Id. The court disregarded well-settled precedent in holding that an instruction on provoking the difficulty was authorized based on inferences, rather than evidence, that appellant said something with the intent to provoke Nguyen to attack him with deadly force so he would have a pretext to kill Nguyen.

An instruction on provoking the difficulty that is not supported by the evidence constitutes an improper limitation on the right to act in self-defense. Stanley v. State, 625 S.W.2d 320, 321 (Tex. Crim. App. 1981). A provocation instruction is proper where the deceased made the first attack, but was induced to do so by words or acts of the defendant reasonably calculated and intended to provoke an attack so the defendant could kill him. Tave v. State, 620 S.W.2d 604,

9

605-06 (Tex. Crim. App. 1981). A provocation instruction is improper where there was no evidence that the defendant's words or acts were intended to provoke an attack so he could kill the deceased. Id. at 606.

The court of appeals speculated that appellant said something to Nguyen that provoked the initial attack and that appellant intended to provoke that attack so he could kill Nguyen. The jury cannot properly infer that the defendant made a provocative statement, much less that he did so with the intent to provoke an attack so he could kill the deceased. Discretionary review is required because the decision of the court of appeals conflicts with this Court's well-settled precedent on the issue of whether the evidence raised provoking the difficulty. TEX. R. APP. P. 66.3(c).

The court of appeals also observed in *dicta* that, even if the provocation instruction were erroneous, appellant cannot show "some harm" because the charge contained an instruction that the right of self-defense would not be impaired if the jury found that he did not provoke the difficulty, and the prosecutor did not focus on provocation during summation. Tran, 2014 WL 859674 at *8. The harmless error determination conflicts in principle with Mendoza v. State, 349 S.W.3d 273 (Tex. App.—Dallas 2011, pet. ref'd), which held that an erroneous provocation instruction is harmful because it directs the jury not to consider self-defense at all if it finds there was provocation. Id. at 284. An erroneous

10

provocation instruction is harmful if, in its absence, there was a chance that the jury would have found that the defendant acted in self-defense.  Id. at 281-82.  Furthermore, the prosecutor did argue during summation that the jury should reject self-defense because appellant provoked the difficulty (6 R.R. 199, 202).

The video recording demonstrates that Nguyen attacked appellant and started the fight.  Absent the provocation instruction, there was a chance that the jury would have found that appellant acted in self-defense.  Thus, the erroneous instruction resulted in "some harm."  Discretionary review also is required because the decision of the court of appeals conflicts in principle with Mendoza (which it did not even mention) on the issue of harm.  TEX. R. APP. P. 66.3(a).

## CONCLUSION

This Court should grant discretionary review to resolve these important questions of law.

Respectfully submitted,

/s/ Randy Schaffer

Randy Schaffer
State Bar No. 17724500

1301 McKinney, Suite 3100
Houston, Texas 77010
(713) 951-9555
(713) 951-9854 (facsimile)
noguilt@swbell.net (email)

Attorney for Appellant
NAM BRYAN TRAN

11

## CERTIFICATE OF SERVICE

I served a copy of this document on Charles Mallin and Andy Porter, assistant district attorneys for Tarrant County, 401 W. Belknap, Fort Worth, Texas 76102; and on Lisa McMinn, State Prosecuting Attorney, P.O. Box 12405, Capitol Station, Austin, Texas 78711, by United States mail, postage prepaid, on April 17, 2015.

/s/ Randy Schaffer
Randy Schaffer

## CERTIFICATE OF COMPLIANCE

The word count of the countable portions of this computer-generated document specified by Rule of Appellate Procedure 9.4(i), as shown by the representation provided by the word-processing program that was used to create the document, is 2,504 words. This document complies with the typeface requirements of Rule 9.4(e), as it is printed in a conventional 14-point typeface with footnotes in 12-point typeface.

/s/ Randy Schaffer
Randy Schaffer

# **APPENDIX**

Opinion of the Sixth Court of Appeals

2014 WL 859674
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR
DESIGNATION AND SIGNING OF OPINIONS.

**MEMORANDUM OPINION**
**Do Not Publish**
Court of Appeals of Texas,
Texarkana.

Nam Bryan **TRAN**, Appellant
v.
The **STATE** of Texas, Appellee.

No. 06–13–00087–CR.  |  Submitted
Jan. 21, **2014**.  |  Decided March 4, **2014**.

On Appeal from the 371st District Court, Tarrant County,
Texas, Trial Court No. 1277354D.

**Attorneys and Law Firms**

Max Striker, for Nam Bryan **Tran**.

Charles M. Mallin, for The **State** of Texas.

Before MORRISS, C.J., CARTER and MOSELEY, JJ.

**MEMORANDUM OPINION**

Memorandum Opinion by Justice CARTER.

**\*1** Nam Bryan **Tran** appeals his conviction by a jury for the murder of Austin Nguyen. **Tran** admitted shooting Nguyen, but claimed he acted in self-defense. The jury rejected **Tran's** claim of self-defense and assessed punishment at ninety-nine years' imprisonment. [1] Because (1) the jury's rejection of **Tran's** claim of self-defense is supported by legally sufficient evidence, (2) error in the application paragraph of the court's charge was harmless, (3) the evidence supports the inclusion of a provocation instruction in the jury charge, (4) the admission of evidence regarding **Tran's** knowledge of gun laws was not an abuse of discretion, and (5) the trial court did not abuse its discretion in limiting Loc **Tran's** testimony, we affirm the judgment of the trial court. [2]

---

1      TEX. PENAL CODE ANN. § 19.02(b) (West 2011).

2      Originally appealed to the Second Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to Section 73.001 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Second Court of Appeals and that of this Court on any relevant issue. *See* TEX.R.APP. P. 41.3.

**I. The Evidence Is Legally Sufficient to Support Rejection of Self–Defense**

**A. Applicable Law and Standard of Review**
Because **Tran** claimed self-defense, he had the burden of producing some evidence to support this defense. *See Zuliani v. State*, 97 S.W.3d 589, 594 (Tex.Crim.App.2003). Once **Tran** raised the defense, the **State** had the burden of persuasion to disprove the defense. *Id.* The burden of persuasion does not require the production of evidence, but it does require that the **State** persuade the jury beyond a reasonable doubt that the defendant did not act in self-defense. *Allen v. State*, 253 S.W.3d 260, 267 (Tex.Crim.App.2008); *Zuliani*, 97 S.W.3d at 594. Self-defense is a fact issue to be determined by the jury, which is free to accept or reject any defensive evidence on this issue. *Saxton v. State*, 804 S.W.2d 910, 914 (Tex.Crim.App.1991). A jury's verdict of guilty is an implicit finding rejecting a theory of self-defense. *Zuliani*, 97 S.W.3d at 594; *Saxton*, 804 S.W.2d at 914.

Because the **State** carries the burden of persuasion to disprove self-defense beyond a reasonable doubt, we review sufficiency of the evidence under the standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Smith v. State*, 355 S.W.3d 138, 144–45 (Tex.App.-Houston [1st Dist.] 2011, pet. ref'd) (applying *Jackson* standard to jury's rejection of self-defense claim).

In resolving the sufficiency of the evidence issue under the *Jackson* standard, we must determine whether, after viewing all evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of murder beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App.2010) (citing *Jackson*, 443 U.S. at 319); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex.App.-Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic

facts to ultimate facts." *Hooper v. State,* 214 S.W.3d 9, 13 (Tex.Crim.App.2007) (citing *Jackson,* 443 U.S. at 318–19); *Clayton v. State,* 235 S.W.3d 772, 778 (Tex.Crim.App.2007). Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App.1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

**\*2** Texas law provides that self-defense justifies the use of deadly force if certain circumstances are met. *Morales v. State,* 357 S .W.3d 1, 7 (Tex.Crim.App.2011). The use of deadly force is justified if "(1) the actor would be justified in using force against the other under Section 9.31; and (2) when and to the degree the actor reasonably believes the deadly force is immediately necessary: (A) to protect the actor against the other's use or attempted use of unlawful deadly force...." TEX. PENAL CODE ANN. § 9.32(a)(2)(A) (West 2011). Section 9.31 justifies the use of force "when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31(a) (West 2011).

### B. The Evidence at Trial

The mood was festive as celebrants left a July 21, 2011, wedding reception to continue the festivities at Saigon Nites, an Asian nightclub in Arlington. Nguyen, who had flown home from New Jersey the previous day to attend the wedding of his friend, was among the celebrants. The nightclub had placed several tables together when it was alerted that a group from the wedding was expected so that the wedding guests could sit together and socialize.

Tran, who was not among the wedding celebrants, visited Saigon Nites that same evening with friends. After arriving at the nightclub, Tran walked around, visited, and spoke with his friend Tinh Pham. Tran then sat down at the end of a group of tables occupied by the wedding celebrants. Although he was seated next to Nguyen, Tran did not know him. Tran remembers Nguyen asking him if his name was Birdie. Tran then leaned in towards Nguyen, and the two spoke. Within seconds of leaning in to speak with Nguyen, Tran was knocked to the ground by Nguyen's punch. Tran

does not recall saying anything that would have provoked this response.

After the attack by Nguyen, Tran reports that he was attacked by one or more men. Frightened, Tran ran in front of the stage area and pulled an AMT handgun from his pocket. Tran testified that he pulled his gun before there were further threats from Nguyen. He conceded that, at the time he pulled his gun, he was the only one displaying deadly force.

Kite, a friend of Tran's, pulled Tran towards the game room. As he was being pulled, Tran fell. As a scare tactic, Tran fired one shot in the air. He did this not because he feared for his life; instead, according to Tran, he intended to scare Nguyen. After he fell, Tran recalls looking directly at Nguyen, who was running at him with a chair, looking as though he intended to harm Tran. Believing that Nguyen was going to strike him with the chair and taking into account Nguyen's group of friends, Tran saw that he was outnumbered and was frightened that he would be seriously injured or killed. Tran yelled at Nguyen to stay back. Tran then pointed his gun at Nguyen, who was facing him, and fired.

**\*3** After the initial shot, Nguyen fell to his right and ceased his charge on Tran. Tran later testified that he shot at Nguyen several times as Nguyen ran toward him, and saw him fall to the floor after he finished shooting. Tran denied shooting Nguyen in the back.

Pham—a friend of Tran's—in large part verified most of Tran's version of events. Although he did not see the blow that initiated the confrontation between Tran and Nguyen, Pham came to Tran's defense when he saw Tran on the floor with Nguyen and Loc Tran [3] stomping on him. After Pham helped Tran to break free of the fight, Tran began backing up towards the restroom area. By that time, the fight had been broken up. Nonetheless, Nguyen chased Tran down. Pham next witnessed Tran holding a gun with Nguyen standing approximately five feet in front of Tran holding a chair. When Nguyen ran at Tran with the chair, Tran fired at Nguyen. At that point, Pham ducked for cover and did not see anything else. A chair with blood spots, split wood, and one broken leg was found in the alcove leading to the restrooms.

[3]     Loc Tran, who is unrelated to Nam Bryan Tran, was Nguyen's brother-in-law.

Other witnesses to the event tell a different story. Kathy Nguyen,[4] who was transported from prison to testify at trial, testified that she, Nguyen, Tran, Loc, Pham, a person named "Bi," and Michael Tran were all seated together at a table inside the nightclub. Although Tran and Nguyen were seated next to each other, she did not see the two arguing while they were seated at the table. When Tran touched Nguyen on the shoulder, Nguyen pushed or punched Tran. After the two began to fight, Kathy assumed Loc stopped the fight. After the scuffle ended, Nguyen walked by the stage, where Kathy was standing. She then felt Tran nudge her, and she saw a gun in his hand. As Kathy was standing between Tran and Nguyen, Tran raised his gun and shot. Although it did not appear that Tran was shooting at Nguyen, Nguyen was lunging at Tran when the initial shot was fired. The scene then became chaotic, with people ducking and running. Nguyen ran towards the game room, where Tran chased him down and shot him. At least five or six shots were fired, and when he was hit in the back, Nguyen fell to the floor. After Nguyen collapsed, Tran quit shooting and fled the scene. The entire incident occurred within approximately ten minutes of Tran's arrival at the club.

4       Though Kathy was unrelated to Nguyen, she considered him to be a close friend.

Loc was seated next to Pham at Saigon Nites on the evening of the shooting. Although Loc did not see Nguyen's initial attack on Tran, when he saw the two fighting, he ran over to try and stop it. Loc grabbed Nguyen by the elbow and tried to pull him away from Tran. He denied kicking or hitting Tran after Tran was down. Pham then grabbed Loc and held him back. While Pham was still holding Loc, Tran pulled a gun from his pocket and shot Nguyen, who was standing two feet from Tran. He denied witnessing Nguyen attack Tran with a chair.

Dr. Lloyd White, a pathologist employed by the Tarrant County Medical Examiner, performed an autopsy on Nguyen's body. Nguyen suffered six gunshot wounds, two of which were fatal. The first fatal wound entered Nguyen's upper mid-back near the base of the neck. White opined that Nguyen might have been lying face down on the floor when this wound was inflicted because the projectile did not exit the body but was recovered under the skin on the front of the abdomen. Conversely, the projectile may not have exited simply because it slowed and stopped at that point. The second fatal wound entered the back of the right shoulder. The projectile causing this wound exited the body on the

lower right front of the abdomen. Both of these wounds were back entrance wounds which generally traversed from back to front and downward through portions of the chest and abdominal cavities. Although the two fatal wounds entered Nguyen's back, White could not determine if these wounds were inflicted while Nguyen was leaning forward.[5]

5       Blood tests suggest that Nguyen ingested a significant amount of cocaine within a fairly short period of time, probably a few hours prior to his death.

*4 Nguyen also suffered defensive wounds to his hand and forearm caused by bullet fragments. These wounds likely resulted from Nguyen raising his arms to defend or block against the gunshots.

After the shooting, Tran left the nightclub and fled to his apartment in a car-jacked vehicle. He then drove to Houston with his girlfriend, where he remained for several months until his arrest on April 3, 2012, following a routine traffic stop.

The reasonableness of a belief that deadly force is being threatened is measured by the objective standard of an ordinary and prudent person. *Echavarria v. State,* 362 S.W.3d 148, 154 (Tex.App.-San Antonio 2011, pet. ref'd). A rational jury could have concluded Tran's belief that Nguyen threatened him with deadly force was not objectively reasonable. It is undisputed that Tran was armed with a handgun while Nguyen was unarmed. The question of whether Nguyen charged Tran with a chair is disputed; while there were blood spatters on the chair, there was no testimony that the chair was struck by a bullet. Kathy testified that Nguyen did not attack Tran with a chair. A video recording of the events in the club on that fateful evening is of poor quality, but could be viewed as depicting a man, identified as Nguyen, using a chair to hide behind or protect himself. Moreover, even though Tran and Nguyen engaged in a physical altercation, there is evidence that after the confrontation was resolved, Tran drew his gun, pursued Nguyen, and shot him.

The jury was required to consider all evidence in deciding if Tran reasonably believed that deadly force was immediately necessary to protect himself against unlawful deadly force by Nguyen. Tran relies on the evidence that Nguyen charged at him with a chair, that he was attacked by one or more additional men in the initial confrontation, and that he believed he was outnumbered. This testimony is not entirely consistent with Tran's claim that his friend, Kite, pulled him

toward the game room, away from Nguyen, after the initial scuffle.

A video recording of the incident depicts the initial blow by Nguyen. The ensuing melee was not captured on camera. However, the fact that this initial confrontation was short-lived is evidenced by the recording itself, which depicts Tran leaving the area of the scuffle and reaching in his pocket for a gun within ten seconds of the initial blow. The poor quality of the video recording renders it of little use in determining the precise events as they unfolded; it does, however, depict club patrons diving for cover after the initial shots were fired, within twenty seconds of the time Tran reached into his pocket to retrieve his gun.

It is the sole province of the jury to resolve conflicting evidence, to evaluate witness credibility, and to determine the weight accorded to witness testimony. *See Cain v. State,* 958 S.W.2d 404, 408–09 (Tex.Crim.App.1997). A reasonable juror could have concluded that Tran, rather than fearing for his life, pursued Nguyen and shot him after Nguyen's initial attack. The jury's decision rejecting Tran's claim of self-defense was one a rational juror could make when presented with the facts of this case. The evidence is sufficient to support the jury's rejection of self-defense.

## II. Error in the Application Paragraph of the Court's Charge Was Harmless

*5 Tran argues in his second point of error that the trial court erred by failing to properly apply the law of self-defense in the court's charge. More precisely, Tran complains of a portion of the application language, which states, "[I]f you should have a reasonable doubt as to whether the Defendant was acting in defense on said occasion under such foregoing circumstances, then you should give the Defendant the benefit of that doubt and find him not guilty ."[6] Because this paragraph utilizes the term "defense" rather than "self-defense," Tran claims that use of the word "defense" and omission of the phrase "self-defense" could have lead the jury to believe that defense and self-defense were two different issues. He thus postulates that the jury could have mistakenly failed to acquit because there was no evidence of defense of another person.

6    The trial court's instructions to the jury included a full abstract instruction of the law on self-defense.

## A. Applicable Law and Standard of Review

"Our first duty in analyzing a jury-charge issue is to decide whether error exists. Then, if we find error, we analyze that error for harm." *Ngo v. State,* 175 S.W.3d 738, 743 (Tex.Crim.App.2005) (citing *Middleton v. State,* 125 S.W.3d 450, 453 (Tex.Crim.App.2003)). The degree of harm required to reverse the trial court's judgment depends on whether or not the appellant objected to the charge before it was given to the jury. *Id.* If the defendant has properly objected to the charge, we need only find "some harm" to reverse the trial court's judgment. *Id.* at 743–44 (citing *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1985) (op. on reh'g)).

If the defendant fails to object, however, or states that he has no objection to the charge, "we will not reverse for jury-charge error unless the record shows 'egregious harm' to the defendant." *Id.* In determining whether egregious harm exists, we examine the charge in its entirety, the state of the evidence, the argument of counsel, and any other relevant information in the record. *Id.*

Tran did not object to the jury charge at trial on the same ground as is now presented on appeal. Here, he complains that the jury charge used the word "defense" rather than "self-defense." At trial, his sole objection was that the provocation portion of the instruction should not have been given because it was not supported by the evidence.

The State contends that Tran failed to preserve any error related to the self-defense application paragraph by failing to raise that objection at trial. While it is true that the omission of a defensive issue from the jury charge must be properly preserved by a defendant's request or objection, *Posey v. State,* 966 S.W.2d 57, 60–61 (Tex.Crim.App.1998), it is also true that when a trial court includes an instruction on a defensive issue in its charge, that instruction must be correct, *Vega v. State,* 394 S.W.3d 514, 515 (Tex.Crim.App.2013). Accordingly, any error in the charge actually given is subject to appellate review. *Id.* at 516. Because no proper objection was made at trial, reversal is required only if the error caused egregious harm. *Id.* at 519.

*6 Here, the trial court included the law of self-defense in the abstract portion of the charge but failed to include the phrase "self-defense," as opposed to "defense," in the application paragraph. This was an error.

## B. The State of the Evidence

First, the jury charge provided a detailed explanation of the law on self-defense. This detailed explanation never mentioned the word "defense"; instead, it only referenced "self-defense." Additionally, the charge included application instructions on the law of self-defense. The paragraph that precedes the complained-of language discusses the right of a person "to defend his life and person from apparent danger" caused by the threat or use of "unlawful deadly force" as part of the right of self-defense. The paragraph that includes the complained-of language parallels the previous discussion of the right of self-defense requiring the actor have reasonable apprehension of the need to protect himself from "unlawful deadly force."

The entirety of the charge, read in context, made clear to the jury that if they believed Tran acted reasonably in defending himself against Nguyen's use of "unlawful deadly force," they should find Tran "not guilty." The charge provided the jury with sufficient instruction to fully consider and give effect to Tran's claim of self-defense. There is simply no evidence that the jury was confused by the trial court's use of "defense" rather than "self-defense." Further, the instruction could be read as more favorable to Tran by broadening the defensive concept to include any "defense," whether personal or for another.

We must also assess whether Tran suffered actual harm in light of the state of the evidence. *Vega,* 394 S.W.3d at 521. As previously noted, the evidence at trial included Tran's testimony regarding self-defense. Although self-defense was Tran's sole defensive theory, the evidence offered to support it was thoroughly disputed. There was ample evidence that after the initial scuffle subsided, Tran pulled a gun, pursued Nguyen, who was unarmed, and shot him. Nguyen suffered two fatal gunshot wounds in the back.

## C. The Argument of Counsel

Neither Tran nor the State ever indicated that the law pertaining to the defense of others, as opposed to the law of self-defense, applied. The State's arguments at trial focused on evidence indicating that Tran did not act in self-defense. The State argued that Tran was angry, uninjured, and unafraid of Nguyen and emphasized the fact that Tran did not walk away when he had the chance to do so. Conversely, Tran maintained that he acted in self-defense and went into a fair amount of detail to further explain the law of self-defense and how Tran's actions fit within the scope of that concept.

Based on the foregoing, we hold that the trial court's inclusion of the term "defense" rather than "self-defense" in the application paragraph of the charge was harmless.

## III. The Evidence Supports the Inclusion of Provocation in the Jury Charge

*7 Tran next complains that the trial court's inclusion of a provocation instruction in the jury charge was error because the evidence did not warrant such an instruction.

### A. Applicable Law and Standard of Review

"[T]he jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby." TEX.CODE CRIM. PROC. ANN. art. 36.13 (West 2007). A trial court must submit a charge setting forth the "law applicable to the case." TEX.CODE CRIM. PROC. ANN. art. 36.14 (West 2007). "The purpose of the jury charge ... is to inform the jury of the applicable law and guide them in its application." *Delgado v. State,* 235 S.W.3d 244, 249 (Tex.Crim.App.2007). "It is not the function of the charge merely to avoid misleading or confusing the jury: it is the function of the charge to lead and prevent confusion ." *Id.*

Generally, a person may not use self-defense if the actor "provoked the other's use or attempted use of unlawful force...." TEX. PENAL CODE ANN. § 9.31(b)(4) (West 2011).

> A charge on provocation is required when there is sufficient evidence (1) that the defendant did some act or used some words which provoked the attack on him, (2) that such act or words were reasonably calculated to provoke the attack, and (3) that the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other.

*Smith v. State,* 965 S.W.2d 509, 513 (Tex.1998). Each of the three elements may be proved circumstantially. *Id.* at 515, 517–18. A provocation instruction should be submitted to the jury only "when there is evidence from which a rational jury could find every element of provocation beyond a reasonable doubt." *Id.* at 514. Our inquiry is whether "a rational jury could have found provocation beyond a reasonable doubt,

viewing the evidence in the light most favorable to giving the instruction." *Id.*

### B. Application of Law to Facts

Here, there is evidence to support the inclusion of a provocation instruction in the jury charge. Kathy testified that while she, **Tran**, and Nguyen were seated at the table, **Tran** was talking loudly and banging his beer bottle on the table. **Tran** was told to "chill out," as he was annoying the group. Shortly thereafter, Nguyen asked **Tran** if his name was Birdie. As clearly depicted on the video recording, **Tran** leaned forward, put his arm on Nguyen's shoulder, and said something to Nguyen. In response, Nguyen immediately pushed **Tran** back, stood up, and punched **Tran**. Although **Tran** claims he cannot remember what he said to Nguyen that evidently provoked a quick and violent response, the jury was free to infer that the words **Tran** spoke were designed to provoke Nguyen. Given that **Tran** shot Nguyen less than one minute after these words were spoken, the jury could easily infer that **Tran's** words were spoken with the intent to create a pretext for inflicting harm on Nguyen. *Id.* at 515 (knowing precise words of provocation not essential); *Matthews v. State,* 708 S.W.2d 835, 838 (Tex.Crim.App.1986) (holding that words alone may constitute provocation justifying provocation charge); *Kennedy v. State,* 193 S.W.3d 645, 655 (Tex.App.-Fort Worth 2006, pet. ref'd) ("It will be enough if the evidence allows an inference beyond a reasonable doubt that the complainant attacked the defendant in response to something the defendant did or said.").

**\*8** Whether the provocative statement was made with the intent of establishing pretext for **Tran** to harm Nyguen is a jury question. Intent is a matter of fact to be determined from all of the circumstances. *Smith,* 965 S.W.2d at 519. The Texas Court of Criminal Appeals has found that it is rarely possible to determine the issue as a matter of law. *Id.* ("These cases illustrate exceptional and extraordinary situations where the jury is prevented from considering the question of what the defendant's intent was in provoking an attack from the deceased."); *Harrod v. State,* 203 S.W.3d 622, 629 (Tex.App. Dallas–2006, no pet.) (finding that jury could have reasonably determined that accused intended to goad victim into fight). The facts of this case are not so rare or exceptional as to preclude the jury's consideration of the issue of intent.

Because there was evidence from which a rational trier of fact could conclude beyond a reasonable doubt that **Tran**

provoked the altercation with Nguyen, the trial court did not err by instructing the jury on the law of provocation.

Even assuming the submission of a provocation instruction was not warranted by the evidence, **Tran** is unable to show actual harm.[7] Our review of the contested and uncontested evidence, as discussed above, and the jury arguments for both sides reflects that **Tran** suffered no actual harm as a result of any error in the submission of the provocation instruction. In its closing argument, the **State** focused on issues pertaining to self-defense, arguing that rather than being in fear of his life, **Tran** was angry. The **State** also emphasized the point that **Tran** and Nguyen did not know one another and that there "were no issues between them." The **State** made two relatively brief references to provocation during the entirety of its closing argument, and the defense addressed the issue in equally abbreviated terms. The focus of jury argument, for both sides, was on the application of the law of self-defense to the facts of this case.

7  Because **Tran** timely objected to the submission of the provocation instruction, any error in the submission of the provocation instruction must be evaluated to determine if such error was "calculated to injure the rights of the defendant." TEX.CODE CRIM. PROC. ANN. art. 36.19 (West 2006); *Almanza,* 686 S.W .2d at 171. In other words, if there was an objection, reversal is required if the accused suffered "some harm" from the error. *Almanza,* 686 S.W.2d at 171. The harm must be actual and not just theoretical. *Id.* at 174.

Furthermore, we believe that any possible error associated with the inclusion of the provocation instruction in the jury charge was mitigated by the inclusion of the following instruction:

> On the other hand, if you find from the evidence that the acts done or language used by the Defendant, if any, were not, under the circumstances, reasonably calculated or intended to provoke a difficulty or an attack by deceased upon the Defendant, or if you have a reasonable doubt thereof, then in such event, Defendant's right of self-defense would in no way be abridged, impaired, or lessened, and if you so find, or if you have a reasonable doubt thereof, you will decide the issue of self-defense in accordance

with the law on that subject given in other portions of this charge, wholly disregarding and without reference to the law on the subject of provoking the difficulty.

The jury charge, as submitted, left the issues of self-defense and provocation to the jury, and after weighing the evidence, the jury ultimately rejected **Tran's** assertions of self-defense and found him guilty of the charged offense. *See Smith,* 965 S.W.2d at 514–18. As such, we cannot conclude that the provocation instruction resulted in actual harm to **Tran**.

## IV. The Admission of Evidence Regarding Tran's Knowledge of Gun Laws Was Not an Abuse of Discretion

*\*9* In his next point of error, **Tran** complains that the trial court abused its discretion in admitting evidence reflecting **Tran's** knowledge of gun laws. On cross-examination, **Tran** testified, without objection, that he had twice been convicted of felony narcotics offenses, the most recent of which occurred in 2008. The **State** asked **Tran** whether he understood that his status as a convicted felon prohibited him from owning a firearm. **Tran** answered affirmatively, after which his attorney lodged a general relevancy objection. The **State** maintained that **Tran's** knowledge that, as a convicted felon, he was prohibited from owning a firearm was relevant to his self-defense claim. "It's contextual as part of the facts in the case from the standpoint of having a firearm there." The trial court overruled **Tran's** objection.

A trial court's decision to admit or exclude evidence is reviewed only for abuse of discretion. *Martinez v. State,* 327 S.W.3d 727, 736 (Tex.Crim.App.2010). A trial court does not abuse its discretion if the decision to exclude evidence is within the "zone of reasonable disagreement." *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g); *Marsh v. State,* 343 S.W.3d 475, 478 (Tex.App.-Texarkana 2011, pet. ref'd). So long as decisions fall within that zone, we may not substitute our own decision for that of the trial court. *Moses v. State,* 105 S.W.3d 622, 627 (Tex.Crim.App.2003).

Our evidentiary rules define "relevant evidence" as that which has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without

the evidence." TEX.R. EVID. 401. Irrelevant evidence is inadmissible. TEX.R. EVID. 402.

The **State** maintains that **Tran's** claim of self-defense made relevant his knowledge that, as a convicted felon, he was not permitted to own a firearm.[8] **Tran** maintained in voir dire, in his opening statement, and indeed throughout the entire course of the trial that he shot Nguyen in self-defense. Under this theory, the jury was called on to decide if **Tran** acted reasonably on the night in question. Both **Tran** and the **State** addressed the issue of reasonable conduct during closing arguments. The **State** argued, and we agree, that **Tran's** decision to bring a firearm into the club when he knew he was prohibited from owning such a weapon was relevant to the question of whether his conduct in shooting Nguyen was reasonable under the circumstances.

8     Our law forbids a convicted felon from possessing a firearm within five years from the date of his release from confinement or community supervision. TEX. PENAL CODE ANN. § 46.04(a)(1) (West 2011). That five-year prohibition extends indefinitely to any location other than the premises at which the person lives. TEX. PENAL CODE ANN. § 46.04(a)(2) (West 2011).

Because the trial court's decision to admit evidence of **Tran's** knowledge that he was prohibited from owning a firearm falls within the zone of reasonable disagreement, the trial court did not abuse its discretion in admitting this evidence.

## V. The Trial Court Did Not Abuse its Discretion in Limiting Loc Tran's Testimony

In his final point of error, **Tran** complains that the trial court abused its discretion by impermissibly limiting the testimony of Loc. During cross-examination, **Tran's** attorney asked Loc if he knew a person called "Blackie." Loc answered affirmatively. Counsel next asked Loc if Blackie killed Julie, the **State** lodged a relevance objection, and the following discussion at the bench ensued:

*\*10* [Defense Counsel]: Christy and Lily were fighting, and Julie. Blackie came up and shot Julie, and he's in the pen for it.

THE COURT: Okay.

[Defense Counsel]: My Defendant is best friends with Christy and Lily.

THE COURT: Okay.

[Defense Counsel]: That's where the bad blood is, and that's where the angst and the animosity, and that's what he won't admit.

....

THE COURT: Okay.

[Defense Counsel]: It's relevant because there was bad blood and the deceased was the aggressor in the fight, and my guy killed him in self-defense.

....

THE COURT: But this witness just said that he did not know your client.

[Defense Counsel]: I know, and he's lying.

THE COURT: Well, that may very well be, but that means that at this point what you're saying is not relevant.

The trial court later permitted Tran to submit a bill of exception outside the presence of the jury, in which Loc testified that (1) his sister-in-law, Julie, was killed several years ago during a fight with two women, Christy and Lily, (2) a man who went by the name "Blackie," of Laotian descent, shot and killed Julie, and (3) Blackie is currently in prison after having been convicted of killing her.

Loc testified that he did not know Tran and did not have bad feelings toward Tran prior to Nguyen's death. As far as Loc was aware, Nguyen did not know Tran prior to the night of Nguyen's death. Loc did not know why Nguyen punched Tran and was unaware of whether his family members had bad feelings toward Tran prior to the shooting. Loc was further unaware of the relationship the two girls who fought with Julie might have had with Tran.

The excluded testimony failed to establish the existence of "bad blood" between Tran and Nguyen. Loc testified that he knew of no "bad blood" and that Tran and Nguyen did not know each other prior to the night of the shooting. Tran also testified that he did not know Nguyen prior to the evening in question. In short, the excluded testimony did not have the potential of making a fact of consequence—the existence of a feud between the families of Nguyen and Tran—more or less probable than it would be without the excluded testimony. We find no abuse of discretion in the exclusion of the proffered evidence.

## VI. Conclusion

We affirm the judgment of the trial court.

---

© 2015 Thomson Reuters. No claim to original U.S. Government Works.